## HENRY HOWARD *vs.* VARNUM J. BATES & another.

Each of the tenants in common of a tract of land, mill and water privilege, conveyed his share of the mill and water privilege to A., his heirs and assigns, by a separate deed, together with all the right and privilege which each had to flow any land owned by him with his cotenants: Said tenants in common conveyed said land to C., subject to B.'s right to flow the same, as granted in their deed to him; and A. conveyed the mill to B., with the right and privilege derived from the deeds of said tenants in common: B. raised his mill dam and flowed C.'s land to a greater extent than it was flowed by the dam of said tenants in common; and C. preferred a complaint against B. to recover damages for the additional flowing. *Held*, that B. had an unlimited right, by his deeds from the tenants in common, to flow the land thereby conveyed, and that the complaint could not be supported.

THIS was a complaint, on the Rev. Sts. *c.* 116, for flowing land in Bellingham by means of a mill dam. The respondents claimed the right to flow without payment of damages; and the case went to a jury, on the question whether they had such right. Trial in the court of common pleas, before *Ward*, J

The complainant, to show his title to the land described in his complaint, introduced three deeds, dated June 12th 1832, each conveying to him an undivided part of said land. One of these deeds was given by Nathaniel Miller and others, one by William S. Hastings and others, and one by Benjamin Davenport and others. The respondents admitted that a good title to the whole of said land was conveyed to the complainant by these deeds; but they relied, in defence, upon a reservation, made by the grantors, in each of said deeds, to the owners of a stone factory, which stood upon their (the respondents') dam at the time when said deeds were executed. That reservation was in these words: "Reserving and excepting all the rights and privilege of flowing said premises, which the owners of said stone factory, or any other persons, may lawfully have by virtue of any agreement or covenant with us, or our grantors, or other lawful owners of the granted premises, at any former period, or otherwise."

The complainant also introduced evidence tending to show, that the respondents, since the date of the deeds aforesaid, had erected a mill in the place of, and larger than, the stone factory

referred to in said deeds, and had also raised their dam, and flowed the complainant's land to a greater extent than it was flowed at the time of, or previously to, the execution of said deeds.

The respondents then introduced deeds, dated May 10th 1820, made to Joseph Ray and Rila Scott, by the same persons who gave the aforesaid deeds to the complainant, conveying the mill dam and privilege which the respondents claimed, under said Ray and Scott, through mesne conveyances. In one of these deeds to Ray and Scott, namely, that made to them by Seth Hastings, were the following clauses : " Together with all right and privilege which the said Seth Hastings has to flow any land belonging to him in part, lying in common and undivided with said Nathaniel Miller, Whiting Metcalf, and heirs of Samuel Penniman, situate and lying on the westerly side of said canal and Charles River : Also, all right and privilege of flowing, reserved in a deed of a tract of land of 28 acres, which said Seth Hastings, Nathaniel Miller, Whiting Metcalf and Samuel Penniman, on the 4th of November 1817, made to Pelatiah Smith of said Bellingham ;· reference to be had to said deed for the water privilege and right of flowing reserved in said deed : And the said Ray and Scott, their heirs and as-signs, are also to have the right and privilege to enter on the land, on the west side of said canal and dam, now owned in common by the said Hastings, Miller, Metcalf, and Penniman's heirs, for the purpose of repairing the said canal and dam, whenever repairs are necessary to be made on said canal and dam." In each of the other deeds to Ray and Scott, there were similar clauses, conveying the right which the grantor had to flow the land owned by him in part, lying in common, &c. and also the right reserved in the deed made by the several grantors to Pelatiah Smith.

The reservation in said deed to Pelatiah Smith was in these words : " The said grantors reserving to themselves, their heirs and assigns, all the use and privilege of the waters covering said land in Charles River ; also the right to flow as much of said land, as will be necessary to carrying and working the cot

41·*

ton factory mill standing near said land, by the said grantors, or another mill or water works, which will not flow more of said land than what will be flowed by working the said cotton mill, free from and without any damages to be paid, by the said grantors, their heirs or assigns, to the said Pelatiah Smith, his heirs or assigns, for the flowing aforesaid, for the purposes aforesaid." .

Upon the foregoing facts, the respondents contended that they had an unlimited right to flow the complainant's land, without any compensation or equivalent. The complainant contended that the respondents had no right to flow any higher than the point limited in the aforesaid deed to Pelatiah Smith, and to which the owners of said stone factory had been accustomed to flow, previously to the conveyance of the land to the complainant.

The judge instructed the jury, that the respondents had an unlimited right to flow the complainant's said land, without paying damages. A verdict was returned for the respondents, and the complainant alleged exceptions to the ruling.

*Choate & Cleveland,* for the complainant.

*Wilkinson & B. R. Curtis,* for the respondents.

WILDE, J. The general question submitted on the report of the facts is, whether the respondents have a right to flow the lands of the complainant, to the extent alleged in his complaint, without making compensation for damages ; or whether their right is limited, conformably to the use of the waters of the stream at the time they acquired their title. The lands described in the complaint were formerly owned by Seth Hastings and others, from whom the complainant derived his title ; and by his title deeds, the respondents' right to flow the lands conveyed, which had been before granted to Ray and Scott, from whom the respondents derive their title, is expressly reserved. So that the case depends on the construction of the deeds to Ray and Scott.

In the deed from Seth Hastings to the said Ray and Scott is the following clause :  "Together with all the right and privilege, which the said Seth Hastings has, to flow any land belonging to him in part, and lying in common and undivided with

the said Nathaniel Miller, Whiting Metcalf, and the heirs of Samuel Penniman, situate and lying on the westerly side of said canal and Charles River." A like clause is contained in the deeds to said Ray and Scott from the other tenants in common.

The counsel for the complainant contend that the tenants in common flowed their lands by virtue of mutual licenses, before their grants to Ray and Scott, and that the right of each was limited to the extent to which the waters were thus flowed.

But we think that there is no ground for this argument. Each of the tenants in common had a right to the possession of the whole property, and might flow the whole; but they occu pied it together, according to their several titles, and not under mutual licenses. Whatever rights they had to flow the lands now belonging to the complainant were, in express terms, granted to Ray and Scott; and it makes no difference that the grants were made by separate deeds. There is no limitation, in these deeds, to the grantees' right to flow the lands, so far as might be necessary or beneficial. Nor can it be inferred, from the language of the deeds, that it was intended to limit the right of flowing conformably to the former usage. Nor is the conformity to this usage, by the grantees afterwards, any evidence of such an intention or understanding; for it does not appear that the grantees, or respondents, had any use for an increased head of water, until the erection of their new mill. If, then, any limitation of a grant might be implied from circumstances, there is no ground for any such implication in this case.

*Exceptions overruled*